UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ASHLEY MARIE RODDY, ) | Civil Action No.: 4:21-cv-02553-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| Kilolo Kijakazi,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for DIB and SSI in September 2018, alleging inability to work since November 2015.[2] (Tr. 13). Her claims were denied initially and upon reconsideration.

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

[2] Defendant notes that the onset date was amended to 2018; however, the ALJ did not consider this and made two findings that the onset date and the relevant period began November 1, 2015. (Tr. 15, 30). Thus, for the court's review, the onset of the relevant period begins November 2015.

Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert (VE) testified at a hearing in October 2020. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 5, 2020, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 13-31). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in June 2021, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in August 2021. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on February 3, 1979, and was almost thirty-six years old on the alleged onset date. (Tr. 29). Plaintiff had past work as a nurse assistant. (Tr. 29). Plaintiff initially alleges disability due to bipolar, spina bifida occulta, and back pain. (Tr. 78).

**C.     The ALJ's Decision**

In the decision of November 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 13-31):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since November 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: a bipolar disorder; posttraumatic stress disorder (PTSD); a schizoaffective disorder; degenerative disc disease of the lumbar spine with spina bifida occulta; obesity; and polysubstance abuse, including methamphetamine and marijuana abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she has the following additional limitations: she can frequently stoop, kneel, crouch, balance, and climb ramps and stairs; she should only occasionally crawl or climb ladders, ropes, or scaffolds; she can have no more than frequent exposure to hazards, such as, unprotected heights and around dangerous machinery; she is limited to work in a low stress environment, meaning that the worker is limited to simple, routine and repetitive tasks, is not required to meet a rigid, inflexible production schedule, can make complex decisions, and there are no more than occasional changes in a routine work setting, and any such changes should only be gradually introduced; however, she is able to maintain concentration, persistence, and pace for periods for at least 2 hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; she is able to perform GED Reasoning Development Level 2 jobs; and she should only occasionally interact with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 3, 1979 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to properly evaluate the opinions of Dr. Janit, Dr. Bryan, and PA Kilpatrick. Plaintiff argues the ALJ erred in the subjective symptom evaluation as to consideration of Plaintiff's medication side effect of drowsiness. In a single sentence in conclusory fashion, Plaintiff argues the ALJ erred in other ways, including failing to consider depression/anxiety as severe impairments; Plaintiff fails to cite to the record or any law supporting this argument and fails to further specify the basis for the argument.[3] Plaintiff's reply brief did not address the argument either.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.   LEGAL FRAMEWORK

#### 1.   The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

---

[3] Courts have held that when a plaintiff raises an issue in a manner such as this, the issue is deemed waived. The Fourth Circuit Court of Appeals has stated that the courts "are not like pigs, hunting for truffles buried in briefs. Similarly, it is not our job to wade through the record and make arguments for either party." *Hensley v. Price*, 876 F.3d 573, 581 (4th Cir. 2017); *see also Laborers Int'l. Union v. Foster Wheeler Energy*, 26 F.3d 375 at 398 (3d Cir. 1994) ("a passing reference to an issue . . . will not suffice to bring that issue before this court"); *Erline Co. S.A. v. Johnson*, 440 F.3d 648, 653, n.7 (4th Cir. 2006)(a "conclusory remark" is "insufficient to raise on appeal any merits-based challenge"); *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 152, n.4 (4th Cir. 2012)(issue was waived because plaintiff failed to develop argument); *Sedghi v. PatchLink Corp.*, 440 Fed. Appx. 165, 167 (4th Cir. 2011)("By advancing only a conclusory argument, Sedghi has likely waived the issue."). The court is not required to rummage through the administrative record to construct and present a well-supported position for Plaintiff. *See Hayes v. Self-Help Credit Union*, No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (noting that it is not the role or responsibility of the court to perform the research needed to support or rebut a perfunctory argument).

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW;[5] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary.

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[5] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**Opinions:  Dr. Janit, Dr. Bryan, and PA Kilpatrick**

Plaintiff argues the ALJ failed to properly evaluate the opinions of Dr. Janit, Dr. Bryan, and PA Kilpatrick.

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c, § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to

7

medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017),§ 416.920c. The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a)§ 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c); § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2), § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2).

Dr. Janit

In November 2018, one-time examiner Dr. Janit, Ph.D. opined Plaintiff's reported mood

symptoms "are likely to impair her ability to comply with requests," "are likely to impair her ability to complete detailed and prolonged tasks," and "are likely to impair her social interactions and communication style." Dr. Janit opined "symptoms are likely to impair her attendance and perseverance," and Plaintiff was markedly limited in ability to withstand stress because stressors "have the potential to trigger and/or exacerbate her psychological symptoms." (Tr. 1090-1091).

Upon exam, Plaintiff had normal speech content, mildly depressed mood, and blunted affect. Plaintiff seemed fatigued and appeared mildly anxious. (Tr. 1089). Plaintiff had normal memory and intact abstract reasoning. Concentration and pace were normal. (Tr. 1089). Plaintiff was unable to specify the frequency and duration of her symptoms. (Tr. 1090). Dr. Janit submitted a diagnosis of unspecified bipolar and related disorder due to a lack of information about symptoms. (Tr. 1090).

The ALJ summarized Dr. Janit's opinions. (Tr. 25). The ALJ found the opinions of limited persuasiveness due to: evidence of "DAA" within several months of the one time exam, Plaintiff's report of "DAA" was not consistent with the other medical evidence of record, marked limitation in ability to adhere to work schedule was not consistent with medical evidence in the file, and Dr. Janit did not review the other medical records[6] and his source was the claimant. (Tr. 26). Unlike the weighing of PA Kilpatrick, as discussed below, the ALJ did not make specific Exhibit citations; this is not[7] required but is helpful. The court reviews the ALJ's opinion as a whole. *Craig*, 76 F.3d at

---

[6] It is unclear if this is in reference to any other medical evidence or medical evidence from other years; this may be a factual misstatement by the ALJ as Dr. Janit did review some of PA Kilpatrick's treatment notes in 2018 and references to hospitalization. (Tr. 1086). Regardless, this is but one reason cited to by the ALJ in making the persuasiveness finding and thus, even if it is error, it is not outcome determinative error.

[7] *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014)("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").

9

595. Plaintiff reported to Dr. Janit that she had not used marijuana in a year and had not used meth or cocaine in about 10 years. (Tr. 1088). The ALJ reviewed hospitalization records in 2018 where exacerbation was situational, and Plaintiff had not been taking medication, stating that she thought she did not need it and could not afford it. (Tr. 20). The ALJ cited to Exhibit 6F; in August 2018, Plaintiff was admitted to the hospital and diagnosed with bipolar, cannabis abuse, stimulant abuse, and psychoactive substance abuse. (Tr. 668). It is noted Plaintiff had just been discharged a month prior and had been noncompliant with medications. Plaintiff reported smoking meth and marijuana and tested positive. (Tr. 669-670). A similar hospitalization occurred in June 2018. (Tr. 685). The ALJ noted within months of Dr. Janit's November exam, Plaintiff reported smoking marijuana and was taken to the hospital for bizarre behavior, citing exhibit 7F. (Tr. 745, this is actually August 2018 not September as cited by the ALJ); (Tr. 21).

In performing the opinion analysis of supportability and consistency, the ALJ relied on evidence of Plaintiff's lack of forthrightness with Dr. Janit resulting in Dr. Janit being unaware of multiple hospitalizations due to medication noncompliance and multiple positive drug screens. Dr. Janit was unaware Plaintiff had in fact used meth recently and not 10 years prior as reported by Plaintiff to Dr. Janit. This relates to the 20 C.F.R. § 404.1520c factors and cannot be said to be unsupported by substantial evidence. While the ALJ could have provided additional reasons or more citations to support the reasons already given, the ALJ provided enough for meaningful review by the court under the applicable standard of review.

<u>PA Kilpatrick</u>

In May 2020, PA Kilpatrick completed a form indicating Plaintiff would be off task 25% of the time and this would be the definition of moderately limited when used on the form. Markedly

limited was defined as the inability to perform the activity. (Tr. 1251). PA Kilpatrick opined Plaintiff was moderately limited in all subcategories of understanding and memory. (Tr. 1251). PA Kilpatrick opined Plaintiff was markedly limited in the abilities to carry out detailed instructions, maintain attention/concentration for extended periods, maintain regular attendance, sustain an ordinary routine without supervision, complete a normal workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff was moderately limited in most of the social interaction subcategories. (Tr. 1252). Plaintiff was markedly limited in the ability to set realistic goals or make plans independently of others. (Tr. 1253). There was no explanation for the indications on the form. (Tr. 1253).

The ALJ found PA Kilpatrick's May 2020 opinion not persuasive because it was not consistent with the medical evidence of record especially Exhibits 17-20F, and 22F(the ALJ citing to Plaintiff's admission of using "DAA" on a daily basis and medication non-compliance) and Exhibit 24F(where the ALJ cites Plaintiff was positive for marijuana and meth in June 2020). (Tr. 26).

The following is a summary of the evidence cited by the ALJ in support of finding PA Kilpatrick not peruasive, Exhibits 17F, 18F, 19F, 20F, 22F, and 24F. (Tr. 26). Exhibit 17F is 2019 treatment notes from PA Kilpatrick himself. (Tr. 1222-1228). Plaintiff had a good response to medication. Plaintiff was running in the woods chasing her dog. Zyprexa helps greatly with mood. Upon exam, Plaintiff had good mood and clear thought process. (Tr. 1222-1223). On June 14, 2019, Plaintiff reported feeling more fatigued with a depakote increase. Plaintiff's mood was stable with no manic episodes. (Tr. 1225).    Upon exam, Plaintiff had good mood and clear thought process. Exhibit 18F contains 2019 notes from PA Kilpatrick. In August 2019, Plaintiff denied any

complications from depakote. (Tr. 1229). Upon exam, Plaintiff had good mood and clear thought process. (Tr. 1230). Plaintiff was repeatedly recommended to see "psych." (Tr. 1230). In October 2019, Plaintiff had good response to medications. (Tr. 1232). Upon exam, Plaintiff had good mood and clear thought process. Exhibit 19F is a December 2019 visit with PA Kilpatrick's office for behavioral health therapy. (Tr. 1239). Plaintiff reported her current regimen was not addressing some of her symptoms. (Tr. 1239). Exhibit 20F is continued therapy. (Tr. 1241). Plaintiff reported some relief with some increased ability to communicate and was taking medication as prescribed. (Tr. 1241). In December 2019, Plaintiff had good response to medications. Plaintiff reported to PA Kilpatrick that she was tired during the day and did not want to be on medication for bipolar. (Tr. 1243). Upon exam, Plaintiff had good mood and clear thought process. Zyprexa was stopped and Seroquel started. (Tr. 1244). In March 2020, Plaintiff was seen by PA Kilpatrick. Plaintiff had good response to medications. Plaintiff's new regimen was helping much better with mood and no manic episodes. Plaintiff reported at times she will sleep more because gets bored. (Tr. 1248). Upon exam, Plaintiff had good mood and clear thought process. Exhibit 22F contains notes from a multiple day hospital admission in May 2020. (Tr. 1261). Plaintiff reported she was sending emojis to her family that had meaning and she missed two nights of psych meds. (Tr. 1263). Plaintiff stated she used marijuana daily and wanted to be part of a study on marijuana use. (Tr. 1267). Plaintiff was positive for meth, marijuana, and benzos. (Tr. 1267). Plaintiff reported meth helped her ADHD. (Tr. 1268). Upon exam, Plaintiff had calm, superficially cooperative, guarded behavior. (Tr. 1270). Plaintiff had anxious, odd affect. Plaintiff had fair concentration. Plaintiff had delusional thought content. (Tr. 1270). Exhibit 24F contains June 2020 hospital records. (Tr. 1294). Plaintiff had flight of ideas and trouble sleeping. (Tr. 1294). Plaintiff was positive for meth and marijuana again. (Tr. 1295).

The ALJ supported his finding of unpersuasive by reviewing the consistency and supportability factors of 20 C.F.R. § 404.1520c(b), (c); § 416.920c(b),(c), citing to PA Kilpatrick's contemporaneous treatment notes that did not support the severity of the limitations opined. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of the opinions. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

Dr. Bryan

In August 2019, one-time examiner Dr. Bryan, Ph.D. opined Plaintiff was capable of understanding/carrying out simple instructions, that she would have great difficulty in a manic phase, and did not appear capable of adapting to work stress. (Tr. 1193). Plaintiff reported manic episodes of singing and dancing in the street, reported her August 2018 hospitalization, and stated some medications worked and some did not, but Plaintiff failed to report to Dr. Bryan that the 2018 hospitalizations were a result of her use of multiple illicit drugs. (Tr. 1191). Plaintiff reported to Dr. Bryan the opposite that she had last used meth five years prior and that she smoked marijuana in high school, where the record shows reports that she used marijuana daily. (Tr. 1191). Upon exam, Plaintiff had adequate concentration and normal memory. (Tr. 1192).

The ALJ found Dr. Bryan's opinion was of limited persuasiveness because Plaintiff did not provide "DAA history that is consistent with the medical evidence of record" and Dr. Bryan's findings and limitations were not consistent with other providers, citing Exhibits 17F, 18F, 19F, 20F. (Tr. 26). Those exhibits are summarized and discussed above in PA Kilpatrick's opinion discussion

and show normal exams and good response when compliant with medication. The evidence cited does support that Plaintiff's reports to one-time examiners were not consistent with the record and limitations were not consistent with other contemporaneous treatment exam notes. This relates to the 20 C.F.R. § 404.1520c factors and cannot be said to be unsupported by substantial evidence. While the ALJ could have provided additional reasons, the ALJ provided enough for meaningful review by the court under the applicable standard of review.

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in the subjective symptom evaluation as to consideration of Plaintiff's medication side effect of drowsiness.[8]

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective

---

[8] Defendant frames this issue as only an RFC issue, citing to 20 C.F.R. § 404.1545. (ECF No. 13 at 14). Plaintiff frames her argument based on SSR 16-3p and 20 CFR § 404.1529(c)(3)(iv). (ECF No. 12 at 20). Importantly, an "RFC assessment is a separate and distinct inquiry from a symptom evaluation." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021). The court addresses medication side effect allegations from the regulatory framework of the subjective symptom evaluation; of course, in every social security case, whether side effect allegations are found consistent or inconsistent with the record inevitably will have some effect on the RFC limitations. *See* SSR 16-3p, at *11; 20 CFR § 404.1529(c)(3)(iv)(titled "how we evaluate symptoms" and specifically listing side effects of medication as a consideration).

complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

    1. Daily activities;
    2. The location, duration, frequency, and intensity of pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    **4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;**

> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c)(emphasis added). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ thoroughly summarized Plaintiff's allegations from her testimony and written reports. (Tr. 19-25). The ALJ noted Plaintiff reported last using meth in 2013. (Tr. 19). The ALJ noted Plaintiff stated she sleeps more because her medication makes her sleepy. (Tr. 19). The ALJ noted that even with significant limitations from her mental impairments, polysubstance abuse, and her resulting symptoms, the medical findings did not support a more restrictive RFC. (Tr. 20). The ALJ noted medication noncompliance. (Tr. 20). The ALJ summarized Plaintiff's reports to one-time examiners. (Tr. 21-22). Plaintiff reported difficulty sleeping; the ALJ cited to Exhibit 8E at 5. (Tr. 22). The ALJ then noted records that showed Plaintiff's medications were effective and Plaintiff responded to treatment. The ALJ noted "DAA" exacerbation episodes that caused acute psychosis, citing Exhibit 25F. Plaintiff was positive for meth and marijuana in May 2020 and June 2020. (Tr. 23). The ALJ stated that some of Plaintiff's exacerbations were somewhat situational and some symptoms were a result of her "DAA" problems. (Tr. 23). The ALJ noted Plaintiff's reports of her social interactions and household maintenance. (Tr. 23). The ALJ noted Plaintiff's own reports that she used marijuana daily. (Tr. 23). The ALJ found Plaintiff's statements about her symptoms were

not entirely consistent with the evidence. (Tr. 24). The ALJ found the reported symptoms were inconsistent with the reported daily activities:

> On November 27, 2018, Dr. Janit noted that the claimant reported that on a typical day, she spent her day completing household tasks, coloring, and using her cellphone. She also stated she exercised occasionally in the form of walking her dog (Ex. 10F at 4). On December 17, 2018, Dr. Millen noted that the claimant reported that she was able to perform all off her activities of daily living without assistance including toileting and grooming, and she was able to perform housework and drive (Ex. 11F at 2). On June 24, 2019, Dr. Brown noted that the claimant was able to perform activities of daily living, such as, fastening/unfastening clothes, tying shoes, grooming herself, feeding herself, etc. (Ex. 14F at 4).
>
> On August 6, 2019, Dr. Bryan noted that the claimant stated that she would sometimes get up with her boyfriend when he went to work, he painted houses, and occasionally she would go with him. She reportedly spent her day watching television, playing games on her phone and doing crossword puzzles. She reportedly was able to cook and clean. She stated that she loved to do laundry. She had a current driver's license and drove herself to her appointment. She reported no problems feeding, bathing or dressing herself. However, she did state that if she was in a depressive state and had been in bed for a few days, she also did not shower. She tried to help manage the finances (Ex. 15F at 3). On September 3, 2020, the claimant reported that she had been experiencing improvement in symptoms with consistency with current medication the morning regimen. She reported continuing to feel stable since being released from inpatient psychiatric hospital. She identified commitment to continuing current medication regimen and acknowledged that her hospitalizations had occurred due to her stopping medications; therefore, she had decided that she could not stop medications. **The claimant identified that she had been sleepy and that may have been the medications, but it also may have been that she did not have anything productive to do during the day**. She reported that volunteerism was a functional goal to improve her daily routine and sense of purpose (Ex. 28F at 1). Although these activities and a disability are not necessarily mutually exclusive, the claimant's abilities tends to suggest that the alleged symptoms and limitations may have been overstated.

(Tr. 24-25)(emphasis added). The ALJ considered a multitude of the SSR 16-3p factors. (Tr. 19-28). The ALJ concluded that the record fell short of "fully corroborating" Plaintiff's allegations and they were inconsistent with the record as a whole. (Tr. 28). The ALJ stated that Plaintiff's activities of daily living, her work record, the objective evidence, and Plaintiff's treatment records all suggested

a greater capacity than Plaintiff alleged; thus, the ALJ concluded that Plaintiff's subjective complaints were "not fully persuasive." (Tr. 29). As discussed above, the ALJ reviewed Plaintiff's testimony, reports, medical records, and found Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms were not entirely consistent with the evidence. (Tr. 24). A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on

substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
|  | s/ Thomas E. Rogers, III |
| March 23, 2022 | Thomas E. Rogers, III |
| Florence, South Carolina | United States Magistrate Judge |